## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nita L. Stoops,                                    Civil No. 08-221 (ADM/SRN)

      Plaintiff,

    v.                                             **REPORT AND RECOMMENDATION**

Michael J. Astrue, Commissioner
of Social Security,

      Defendant.

---

Fay E. Fishman, Esq., Peterson & Fishman, 3009 Holmes Avenue South, Minneapolis, Minnesota 55408, on behalf of Plaintiff

Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Plaintiff's Motion for Summary Judgment (Doc. No. 8), and Defendant's Motion for Summary Judgment (Doc No. 15). Pursuant to 42 U.S.C. § 405(g), Plaintiff Nita L. Stoops seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who determined that Plaintiff was not disabled during the period from February 19, 1997 through December 31, 1998, and therefore not entitled to disability insurance benefits (DIB). This matter has been referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1(c).

For the reasons set forth below, this Court recommends that Plaintiff's motion be granted as to her request for remand and that Defendant's motion be denied.

I.      **BACKGROUND**

A.      **Procedural History**

The procedural history pertaining to Plaintiff's application for DIB is lengthy.  Plaintiff

filed the present application for benefits on September 8, 1998.  (Admin. R. at 103-106, 250.)

She alleged a disability onset date of February 19, 1997, due to headaches and physical

impairments affecting her right arm, hand, shoulder, and neck.  (Id. at 103, 112, 118.)  The

application was denied initially and on reconsideration.  (Id. at 86, 93.)  Plaintiff then requested a

hearing, which was held before an ALJ on June 23, 1999.  (Id. at 35-82.)  Plaintiff appeared with

her attorney and testified at the hearing.  (Id.)  Plaintiff's husband, a medical expert, and a

vocational expert also testified. (Id.)  On August 23, 1999, the ALJ issued an unfavorable

decision concluding that Plaintiff was not disabled.  (Id. at 247-59.)  The Appeals Council

declined to review the decision, and the decision stood as the Commissioner's final decision.  (Id.

at 6-7.)

Plaintiff appealed the Commissioner's decision in federal court.  Stoops v. Apfel, Civ. No.

00-2088 (DWF/SRN) (D. Minn. filed Sept. 8, 2000).  The Honorable Donovan W. Frank, United

States District Court, remanded the case because the ALJ did not adequately explain his reasons

for rejecting Plaintiff's subjective complaints of pain and medication side effects.  Specifically,

the ALJ neglected to explain why he found Plaintiff's complaints of pain inconsistent with other

evidence.

The scope of the remand was limited to reconsideration of Plaintiff's subjective

complaints.  A second hearing was held before a different ALJ on March 19, 2002.  (Admin. R. at

322-33.)  There was no testimony taken at this hearing because the ALJ and Plaintiff's counsel

agreed that the testimony from the first hearing was adequate and the record was completely

developed.  (Id. at 328.)  The ALJ issued an unfavorable decision on July 23, 2002.  (Id. at 246.)

Plaintiff filed exceptions to the decision (id. at 225-30), but the Appeals Council denied review

(id. at 223-34).

Plaintiff filed an appeal in federal court.  Stoops v. Barnhart, Civ. No. 04-1739

(JMR/SRN) (D. Minn. filed Apr. 26, 2004).  This Court issued a Report and Recommendation on

January 21, 2005, recommending that the case be remanded because the ALJ did not properly

consider Plaintiff's complaint of headaches.  Id. Report & Recommendation at 1-2 (D. Minn. Jan.

21, 2005).  In particular, the ALJ stated that treatment notes from Plaintiff's treating physicians

did not reflect that she had ever complained of a headache, when in fact, at least two such

treatment records from the relevant time frame existed.  Id. at 8-9.  Records predating the alleged

onset of disability also evidenced Plaintiff's reports of severe headaches as well as medication

prescribed for those headaches, and the record further indicated that her headaches and use of

medication continued into the relevant time period.  Id.  This Court concluded,

> Because of the overwhelming weight of the evidence contrary to [the ALJ's] basis
> for discrediting Plaintiff's subjective complaints of headaches, [the ALJ's]
> credibility determination concerning headaches is not supported by substantial
> evidence and requires a reversal.  Because this reversal may affect [the ALJ's]
> assessment of Plaintiff's RFC, this Court recommends that the case be remanded
> for a re-determination of Plaintiff's RFC, taking into consideration the complaints
> of headaches.

Id. at 10 (emphasis added).  The Honorable James M. Rosenbaum, United States District Court,

adopted the Report and Recommendation and remanded the case "on the grounds that in

determining plaintiff's residual functional capacity, the ALJ did not properly consider plaintiff's

complaints of headaches."  Stoops v. Barnhart, Civ. No. 04-1739 (JMR/SRN), Order at 2 (D.

Minn. Mar. 1, 2005).  Thus, the scope of the remand was limited to a consideration of how

Plaintiff's headaches affected her residual functional capacity (RFC).

The ALJ subsequently held a hearing on the remanded issue and received testimony from

a medical expert, Dr. Andrew Steiner, and a vocational expert, Mr. William Villa.  (Admin. R. at

528-54.)  On July 21, 2006, the ALJ issued another unfavorable decision, having determined that

Plaintiff was not disabled despite her headaches.  (Id. at 340-54.)  Plaintiff filed exceptions to this

decision, and the Appeals Council denied review.  (Id. at 334-38.)  Plaintiff now seeks judicial

review of the decision.

## B.    Factual Background

Plaintiff is a high school graduate and has completed several industrial training courses.

(Id. at 246.)  She has worked as an assembler, janitor, die caster, and plastic molder.  (Id. at 117.)

At the first administrative hearing in 1999, Plaintiff testified that she suffered from

migraines and was not able to work due to pain in her head, arms, shoulder, neck, and upper back.

(Id. at 41, 42.)  She experienced headaches lasting three to five hours in duration, four or five

times a month.  (Id. at 59.)  The headaches affected her vision in her right eye, and she could not

tolerate light or being around people when they occurred.  (Id. at 51, 59.)  She took Vicodin for

the headaches, but it made her feel "nonfunctional," sleepy, and lethargic.  (Id. at 55-56.)  The

weather, stress, and activities such as doing laundry or brushing her hair often triggered the onset

of headaches.  (Id. at 56.)

Plaintiff's husband testified that her headaches and medication prevented her from

cooking, and they went out for dinner three to four times a week.  (Id. at 66.) (Id.)  He also

testified that Plaintiff would typically go to another area of the house with an ice pack when she

had a headache.  (Id. at 67.)

C.      **Medical Evidence of Plaintiff's Headaches**

In December 1996, approximately two months before Plaintiff's alleged onset of disability, Plaintiff met with Dr. Barbara Seizert to treat pain in her right shoulder.  (Id. at 159.) Plaintiff also said she had pain in her neck, right arm, toes, and back, but she did not mention headaches.  (Id.)  Plaintiff saw Dr. Seizert again on October 30, 1997, and reported neck pain, arm pain, and headaches.  (Id. at 156.)  She described her pain on that day as a two on a ten-point scale but explained that the pain worsened during menstruation or with changes in the weather. (Id.)  The most severe pain was alleviated with Vicodin.  (Id.)  Dr. Seizert recommended that Plaintiff continue taking Vicodin and receiving chiropractic care biweekly.  (Id.)

On February 26, 1998, chiropractor Dr. Howard Johnson completed a Physical Capacities Evaluation Form.  (Id. at 166.)  He did not indicate that Plaintiff suffered from or was restricted by headaches.  (Id. at 166-67.)

Plaintiff received chiropractic treatment from Dr. Johnson on July 6, 1998.  (Id. at 163.) She reported occasional, severe migraine headaches, occurring two to three times a month and accompanied by lightheadedness, short-term memory loss, blurred vision, loss of balance, and loss of hearing.  (Id.)  She also reported pain in her shoulder, neck, and right hand.  (Id.)  Dr. Johnson performed several tests and a palpation evaluation before diagnosing moderate chronic myofascitis, severe chronic cervical/brachial syndrome, and moderate chronic cervical subluxations.  (Id. at 164-65.)  He thought Plaintiff would be permanently precluded from working due to her right upper extremity and cervical spine restrictions.  (Id. at 165.)

On July 27, 1998, Dr. Johnson wrote a list of Plaintiff's work restrictions.  (Id. at 162.)

All of the restrictions pertained to her right shoulder, right upper extremity, cervical spine, and neck.  (Id.)  There was no mention of headaches.  (Id.)

On November 12, 1998, Plaintiff told Dr. Seizert she had experienced five or six severe headaches in the previous eight months.  (Id. at 154.)  Her headache pain generally ranged from a three to a ten on a ten-point scale.  (Id.)  Plaintiff said that Vicodin was helpful, and she was taking about ninety pills every four months.  (Id.)  She took Advil when her headaches were not severe.  (Id.)

Dr. Johnson treated Plaintiff on December 9, 1998.  (Id. at 161.)  Plaintiff reported having stomach pain, heart burn, migraine headaches, lightheadedness, short-term memory loss, blurred vision, loss of balance, loss of hearing, and intense pain in her neck and upper shoulders.  (Id.)  The examination revealed mostly mild and moderate pain in her neck and shoulders.  (Id.)

Approximately six months later, Dr. Johnson completed a statement of continued disability related to Plaintiff's disability insurance.  (Id. at 218-19.)  He described Plaintiff's arm and shoulder impairments but did not mention headaches.  (Id.)  He also denied any vision impairment such as blurred vision.  (Id.)

Dr. Seizert remarked in a treatment note dated May 13, 1999, that Plaintiff had experienced severe headaches in the preceding six months, for which she had taken Vicodin and Advil.  (Id. at 220.)  She described Plaintiff's use of Vicodin as "occasional," as Plaintiff had not taken more than 100 tablets in the preceding six months.  (Id.)

**D.      Testimony of the Medical Expert**

Dr. Steiner testified at the April 16, 2006 hearing about Plaintiff's work-related limitations.  He testified that Plaintiff had no impairment or combination of impairments that met

or medically equaled a listed impairment.  He opined that the medical record did not reflect more than mild limitations of her right upper extremity or more than a moderate loss of range of motion of her neck or shoulder.  (Id. at 536.)  Dr. Steiner thought that Plaintiff would be precluded from repetitive, but not occasional, fine manipulations with her right upper extremity, and that she would need arm rests to support the right arm during certain activities.  (Id. at 536-37.)  He further testified that Plaintiff could not perform overhead activities due to her right shoulder and could not lift more than fifteen pounds.  (Id. at 537.)  With respect to Plaintiff's headaches, Dr. Steiner testified that they "were variable in frequency" with severe headaches occurring two to three times a month, but less than one a month in November 1998.  (Id. at 545.)  Dr. Steiner agreed with Plaintiff's lawyer that severe headaches can impair a person's abilities to think, concentrate, and do activities.  (Id. at 545-46.)

     **E.**       **Testimony of the Vocational Expert**

     Mr. Villa also testified at the administrative hearing on April 16, 2006.  The ALJ asked Mr. Villa to consider two hypothetical questions regarding Plaintiff's ability to perform work during the relevant time period, both assuming a younger individual aged forty-three, with a high school education and work experience equivalent to Plaintiff's, impaired by a number of conditions including a history of right upper extremity reflex sympathetic dystrophy, treated with surgery, and headaches and neck pain, treated with medications which could result in grogginess, loss of concentration, and some confusion.  (Id. at 548-49.)  In the ALJ's first hypothetical, there were no limitations on sitting, standing, or walking, although the ability to lift with both hands was limited to fifteen pounds, and further limited to no more than ten pounds with the right hand. (Id. at 549.)  Additional limitations were no more than occasional fine manipulation with the right

upper extremity, with the availability of a support for the right arm during activities, and with no

overhead or over the shoulder work on the right.  (Id.)  Mr. Villa testified that such a person could

work in unskilled jobs such as a security system monitor, selectively placed cashier, and

inspector.  (Id. at 549-50.)

       For the second hypothetical question, the ALJ asked Mr. Villa to add the limitation of

being absent from the workplace, or having to leave early, because of a severe headache or side

effects from medication, as often as three to four times per week.  (Id. at 551.)  Mr. Villa testified

that such absences "would not be consistent with competitive employment."  (Id.)  He opined that

a person absent from or late for work two times a month would be discharged.  (Id.)  The ALJ

then asked Mr. Villa to consider an individual who could not focus on their work due to

headaches or medication.  (Id.)  Mr. Villa testified that this limitation was not consistent with

"any jobs in the competitive labor market."  (Id.)

      **F.**     **The ALJ's Decision**

       In the ALJ's decision of July 21, 2006, she employed the required five-step sequential

evaluation, considering: (1) whether Plaintiff was engaged in substantial gainful activity;

(2) whether Plaintiff had a severe impairment; (3) whether Plaintiff's impairment met or equaled

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether Plaintiff was

capable of returning to her past work; and (5) whether Plaintiff could do other work existing in

significant numbers in the regional or national economy.  See 20 C.F.R. § 404.1520(a)-(f).  The

ALJ first found that Plaintiff had not performed gainful activity since the alleged onset of

disability on February 19, 1997, through the date last insured, December 31, 1998.  (Admin. R. at

347.)  Next, the ALJ determined that Plaintiff suffered from a severe impairment of reflex

sympathetic dystrophy of the right arm treated with thoracic outlet release surgery with associated headaches and neck pain, but that the impairment did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)  The ALJ based this conclusion on the opinions of Dr. Steiner and Dr. LaBree, who had testified at a prior hearing.  (Id.)  Because Plaintiff's impairments did not meet or equal a listed impairment, the ALJ turned to step four of the sequential evaluation.

In assessing Plaintiff's RFC at step four, the ALJ noted that this Court had previously found all other aspects of the ALJ's previous decision adequate.  (Id. at 348.)  The ALJ then determined that Plaintiff's subjective complaints were "not entirely credible."  (Id.)  The ALJ noted that Plaintiff had only two medical appointments with Dr. Seizert during the period from February 1997 through December 1998.  (Id. at 349.)  In addition, Plaintiff's appointments with Dr. Johnson were sporadic.  She saw him only once in March 1997, twice in May 1997, and then not again for almost nine months until February 25, 1998.  (Id.)  Plaintiff did not see Dr. Johnson again until December 9, 1998, when she presented with complaints of neck pain and a headache. The ALJ also noted inconsistencies in Dr. Johnson's records.  For instance, Dr. Johnson remarked in a Workers' Compensation report in July 1998 that Plaintiff had migraine headaches two to three times a month, but in a letter written three weeks earlier, he had made no mention of headaches.  (Id. at 350.)

The ALJ also identified several inconsistencies in the evidence from Dr. Seizert.  For example, Plaintiff's testimony that she took two Vicodin tablets three or four times week and that she stayed in bed a couple times a week because her headaches were so severe was inconsistent with the objective evidence of record.  (Id. at 350.)  The ALJ noted that Plaintiff's reported

9

Vicodin use would total twenty-four to thirty-two tablets a month while Dr. Seizert's report from October 1997 indicated that Plaintiff used, on average, nine tablets a month.  (Id.)  Additionally, Plaintiff never requested an increase in dosage, never sought urgent or emergency care for intractable headaches, and never requested a headache evaluation during the relevant time frame, all of which were inconsistent with debilitating headaches.  (Id. at 350-51.)  The ALJ also observed that although Dr. Seizert's October 1997 treatment plan included chiropractic care every two weeks for six months, Dr. Johnson's chiropractic records revealed that Plaintiff had only two treatments in six months and five treatments in fourteen months.  (Id. at 351.)  Based on Plaintiff's failure to follow her physician's treatment plan, the ALJ further discounted her credibility. (Id.)

The ALJ did not completely exclude headaches from the RFC assessment, however.  She gave Plaintiff "the benefit of the doubt that she does experience some pain as a result of headaches."  (Id.)  The ALJ therefore reduced Plaintiff's RFC to unskilled labor in order to allow for the distraction of headache pain.  (Id.)

Having found inconsistencies in the medical records from Plaintiff's providers, the ALJ relied largely on Dr. Steiner's testimony, which the ALJ found consistent with the findings of both Dr. Wei and Dr. Seizert, to formulate Plaintiff's RFC.  (Id. at 352.)  The ALJ ultimately determined that Plaintiff had the RFC to perform unskilled work, with the ability to lift fifteen pounds but no more than ten pounds on the right, no more than occasional fine manipulation and no repetitive fine manipulation on the right, no overhead or over the shoulder work on the right, with the use of an arm rest or support for the right arm during activities, and no limitations on sitting, standing, or walking.  (Id. at 351-52.)

10

Given Plaintiff's RFC, the ALJ determined that she could not perform any of her past relevant work.  (Id. at 352.)  The burden then shifted to the Commissioner to show that Plaintiff could perform other jobs existing in significant numbers in the national economy.  (Id.)  Based on the testimony of the vocational expert, the ALJ determined that Plaintiff could perform a significant number of jobs including security system monitor, cashier at a sedentary level, and inspector.  (Id. at 353.)  Because Plaintiff could perform work existing in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. (Id. at 353.)

## II.   STANDARD OF REVIEW

Congress has prescribed the standards by which disability benefits may be awarded.  "The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability."  Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  Id. § 1382c(a)(3)(B).

### A.   Administrative Review

If a claimant's initial application for benefits is denied, he or she may request

reconsideration of the decision.  20 C.F.R. § 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  Id. § 416.1429.  If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, although review is not automatic.  Id. § 416.1467.  The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon the claimant unless the matter is appealed to a federal district court within sixty days after notice of the Appeals Council's action.  42 U.S.C. §§ 405(g); 20 C.F.R. § 416.1481.

**B.**     **Judicial Review**

Judicial review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence in the record as a whole.  Hutsell v. Sullivan, 892 F.2d 747, 748-49 (8th Cir. 1989).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The review is "more than a mere search of the record for evidence supporting the [Commissioner's] finding."  Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).  Rather, "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's

impairments.
6.     The testimony of vocational experts when required
       which is based upon a proper hypothetical question
       which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527).  A court

may not reverse the Commissioner's decision simply because substantial evidence would support

an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing

the record for substantial evidence, the Court may not substitute its own judgment or findings of

fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  Instead, the court must consider "the

weight of the evidence in the record and apply a balancing test to evidence which is

contradictory."  Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).  If it is possible to reach

two inconsistent positions from the evidence, and one of those positions represents the

Commissioner's decision, the court must affirm that decision.  Robinson v. Sullivan, 956 F.2d

836, 838 (8th Cir. 1992).

## III.    DISCUSSION

Plaintiff makes several arguments in support of her motion for summary judgment.  First,

she contends that the ALJ did not follow the mandate of the District Court's remand.  Second, she

argues that the ALJ's consideration of her headaches was flawed.  Third, she contends that the

ALJ based her RFC on medical records that did not pertain to headaches.  Finally, she asserts that

the ALJ did not ask a proper hypothetical question to the vocational expert.

### A.     Scope of Remand

The ALJ stated in her 2002 decision that no evidence of headaches existed in the medical

record during the relevant period.  This was error and required remand.  Treatment records from

both Dr. Seizert and Dr. Johnson contained evidence of headaches, and on remand, the ALJ was

to consider and weigh this evidence.  Contrary to Plaintiff's position, however, the Court did not

instruct the ALJ that she had to find the complaints of headaches credible.  Indeed, it would be

improper for the Court to weigh the credibility of a subjective complaint.  See Baldwin v.

Barnhart, 349 F.3d 549, 558 (8th Cir. 2003) ("The credibility of a claimant's subjective testimony

is primarily for the ALJ to decide, not the courts.").  The Court merely determined that the ALJ

had not correctly weighed Plaintiff's credibility, and the scope of the remand was limited to a

consideration of whether and to what extent Plaintiff's headaches affected her RFC.

### B.      The ALJ's Consideration of Plaintiff's Headaches

The ALJ found Plaintiff's complaints of severe headaches not fully credible.

Nevertheless, she accounted for the distraction caused by some headache pain in assessing

Plaintiff's RFC.  The Court finds that the ALJ's credibility finding and corresponding limitation

are supported by substantial evidence.

Credibility determinations are governed by certain factors enunciated in Polaski v.

Heckler, 739 F.2d 1320 (8th Cir. 1984).  In assessing subjective complaints, an ALJ must

consider: "(1) the claimant's daily activities; (2) the duration, frequency[,] and intensity of pain;

(3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors;

and (5) functional restrictions."  Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (citing

Polaski, 739 F.2d at 1322).  Other relevant factors are the claimant's work history and the

objective medical evidence.  Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999) (citing Polaski,

739 F.2d at 1322).  "While these considerations must be taken into account, the ALJ's decision

need not include a discussion of how every Polaski factor relates to the claimant's credibility."

Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Tucker v. Barnhart, 363 F.3d 781, 783

(8th Cir. 2004)).  "The ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole." Id. (citing Polaski, 739 F.2d at 1322).

In discounting Plaintiff's complaints of debilitating headaches, the ALJ noted that she had only two medical appointments with Dr. Seizert during the period of February 1997 through December 1998.  The ALJ also noted a nine-month period of time during which Plaintiff did not receive chiropractic care from Dr. Johnson.  Although Dr. Seizert's treatment plan included chiropractic care every two weeks for six months, chiropractic records showed that Plaintiff had only two treatments in six months and five treatments in fourteen months.  The ALJ properly discounted Plaintiff's credibility based on her infrequent treatment and her failure to follow her doctor's treatment plan.  Furthermore, Plaintiff did not require urgent or emergency care during the relevant time period, and she did not seek the assistance of a specialist during that time.  These factors were further grounds to discount her credibility.

There are several inconsistences in the medical records of Plaintiff's providers, of which the ALJ took note.  Dr. Johnson did not mention Plaintiff's headaches as a limiting condition in a letter he wrote in July 1998.  Dr. Johnson remarked on December 16, 1998, that Plaintiff had not experienced a headache since her last visit.  Although her previous visit was only seven days earlier, this report is inconsistent with Plaintiff's claim that she experienced headaches several times a week.  It is true that other records show more frequent headaches, but a decision is not reversible simply because other evidence supports a different conclusion.  See Baker, 730 F.2d at 1150.  This case presents a circumstance in which it is possible to draw two inconsistent positions from the medical evidence, but one of the positions is that of the Commissioner, and that position must therefore be upheld.  See Robinson, 956 F.2d at 838.  Moreover, there is substantial

evidence that Plaintiff's headaches were alleviated by medication, and thus, even if they occurred more frequently than accepted by the ALJ, it is reasonable to infer they were alleviated just as frequently.

With respect to Plaintiff's hearing testimony, her assertions that she took two Vicodin three or four times week and that she stayed in bed a couple times a week were not consistent with the record.  As the ALJ observed, Plaintiff's reported Vicodin use would total twenty-four to thirty-two tablets a month, but one of Dr. Seizert's records indicated that Plaintiff used, on average, nine tablets a month.  Plaintiff also testified that her headaches affected her vision and hearing on the right side, but she did not report these symptoms to Dr. Seizert during the relevant time frame.  Additionally, Dr. Johnson remarked in July 1998 that Plaintiff's vision was fine. Plaintiff testified that she had four or five migraines a month, but in November 1998, Plaintiff told Dr. Seizert that she had experienced only five or six severe headaches in the past eight months. Plaintiff testified that when she had a severe headache, she was not able to tolerate light, activity, or being around other people.  Yet Plaintiff's husband testified that they ate dinner at restaurants three or four times a week.  If the frequency and severity of Plaintiff's headaches was as often as she claimed, she would not have been able to eat at restaurants three or four times a week.  As Mr. Stoops' testimony revealed, they ate at restaurants on days when Plaintiff had taken pain medication.  Presumably, she took the pain medication to alleviate her headaches and other pain.

Regarding Plaintiff's use of medication, the ALJ determined that Plaintiff's headaches were alleviated by her regimen of Vicodin, Advil, and ice packs.  Indeed, Plaintiff told Dr. Seizert in October 1997 and in November 1998 that Vicodin was helpful for her pain.  Plaintiff did not

ask for her medication dosage to be increased or to try other medications for pain relief.

      **C.**      **Whether the ALJ Exceeded the Scope of the Remand by Eliciting Testimony from Dr. Steiner and Recalculating Plaintiff's RFC**

Plaintiff contends that the ALJ erred by relying on the testimony of Dr. Steiner because Dr. Steiner based his opinion on irrelevant medical records. Plaintiff further asserts that the ALJ exceeded the scope of the remand in recalculating her RFC.

Dr. Steiner testified about Plaintiff's headaches and other physical limitations. With respect to the limitations affecting her right upper extremity, Dr. Steiner admitted he relied primarily on medical records from Dr. Wei in 2004. Dr. Steiner later testified that his opinion was based on evidence from February 1997 through December 1998. Plaintiff points out that the evidence from this time period is from Dr. Seizert, not Dr. Wei, and that the evidence is fundamentally different.

The Court need not decide whether Dr. Steiner's testimony about Plaintiff's right extremity constitutes substantial evidence, however, because the testimony is immaterial to the scope of the remand, which was limited to a reconsideration of Plaintiff's subjective complaints of headaches. The Court puts aside for the moment the issue created by the ALJ's elicitation of and reliance on this portion of Dr. Steiner's testimony, and addresses only the portion of Dr. Steiner's testimony relating to headaches. Dr. Steiner testified that Plaintiff's headaches varied in frequency, with two or three severe headaches a month. He specifically relied on medical records from Dr. Johnson and Dr. Seizert, not Dr. Wei. Thus, Plaintiff's argument that Dr. Steiner based his opinion on irrelevant medical records has no bearing here. The ALJ was entitled to rely on Dr. Steiner's testimony regarding headaches.

The Court now returns to Dr. Steiner's testimony regarding impairments other than headaches. The scope of the remand was limited to a consideration of how Plaintiff's headaches affected her RFC. The ALJ recognized this and stated in her decision that "the case was remanded for the Administrative Law Judge to reconsider the residual functional capacity taking into account the complaints of headaches." (Admin. R. at 348.) The scope of the remand did not include reconsideration of Plaintiff's other impairments. Inexplicably, the ALJ nevertheless changed Plaintiff's RFC in significant respects, which had nothing to do with her headaches.

In the Commissioner's 2002 decision, the ALJ found that Plaintiff had the RFC to perform sedentary work, which required lifting no more than ten pounds occasionally, sitting no more than eight hours a day, standing or walking no more than two hours in an eight-hour day, no use of the right arm for repetitive movements or overhead reaching, and requiring a sit/stand option. In the Commissioner's 2006 decision, the ALJ found that Plaintiff had the RFC to perform unskilled work, with the ability to lift fifteen pounds but no more than ten pounds on the right, no more than occasional fine manipulation and no repetitive fine manipulation on the right, no overhead or over-the-shoulder work on the right, with the use of an arm rest or support for the right arm during activities, and no limitations on sitting, standing, or walking. The two RFCs differ in physical exertion level and in lifting, standing, sitting, and walking restrictions. The changes were not attributed to Plaintiff's headaches, but to Dr. Steiner's testimony regarding other physical impairments. By eliciting and relying on this testimony and recalculating Plaintiff's RFC accordingly, the ALJ exceeded the mandate of the District Court, and the case must be remanded.

On remand, the ALJ should elicit testimony from a vocational expert in response to a

hypothetical question setting forth the limitations from the RFC assessed in 2002.  In addition, to

account for the ALJ's finding that Plaintiff is distracted by headache pain, the RFC should further

reflect that Plaintiff is limited to unskilled work.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 8) be **GRANTED** as to

remand;

2.    Defendant's Motion for Summary Judgment (Doc. No. 15) be **DENIED**; and

3.    This matter be **REMANDED** to the Social Security Administration for further

proceedings consistent with this Report and Recommendation.

Dated: January 14, 2009

     s/ Susan Richard Nelson     
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court, and serving all parties by  **January 29, 2009** , a writing which
specifically identifies those portions of this Report to which objections are made and the basis of
those objections. Failure to comply with this procedure may operate as a forfeiture of the
objecting party's right to seek review in the Court of Appeals. A party may respond to the
objecting party's brief within ten days after service thereof. A judge shall make a de novo
determination of those portions to which objection is made. This Report and Recommendation
does not constitute an order or judgment of the District Court, and it is therefore not appealable to
the Court of Appeals.